**UNITED STATES of America**

v.

**Hubert WATERS and Edith Waters.**

**Crim. No. 68–129–G.**

United States District Court

D. Massachusetts.

Sept. 12, 1968.

Paul F. Markham, U. S. Atty., Albert F. Cullen, Asst. U. S. Atty., Boston, Mass., for the United States.

John J. Curtin, Jr., Bingham, Dana & Gould, Boston, Mass., for Hubert Waters.

Barry H. Gerstein, Boston, Mass., for Edith Waters.

MEMORANDUM AND CONDITIONAL
ORDER OF DISMISSAL

GARRITY, District Judge.

In this criminal case, defendants Hubert and Edith Waters, husband and wife, have each been indicted separately for violating both 26 U.S.C. §§ 4704(a) and 4705(a) in connection with separate transfers of heroin and they have been indicted jointly for violating both sections in connection with a third transfer of the same narcotic. There are six counts in all; two each relate to alleged transactions on March 11, 22 and 26, 1968. Defendant Hubert Waters has been unable to make bail. Both defendants are indigent and are represented by attorneys appointed under the Criminal Justice Act of 1964, 18 U.S.C. § 3006A.

On September 6, 1968 the court entered an order on defendants' motions for production of evidence directing the Government to disclose the true name and address of a so-called confidential informant in the case and have him present in court on September 9, when the case was scheduled to be called for trial. It was the court's intention to follow the procedure outlined in United States v. D'Angiolillo, 2 Cir., 1965, 340 F.2d 453, permitting defense counsel to interview the informant privately and call him as a hostile witness if such he proved to be. The court's order of September 6 was based upon representations made by defense counsel at a hearing on their motions on August 29 and the relationship of the so-called informant[1] to the defendants as described in the Government's memorandum of law filed August 29. The name used by the informant in dealing with the defendants was "Mr. Stone," which is not his true name, and that name will be used in referring to him in this memorandum.

On September 9 the Assistant United States Attorney reported to the court that, although able to do so, the Government declined to comply with the court's order of September 6 because of possible danger to Stone should his true identity be revealed and because Stone had cooperated with Government agents in their investigation leading up to the indictment on condition that his identity not be disclosed and that he not be called as a witness and the agents had assured him that these conditions would be honored. The Government requested that the court reconsider its ruling of September 6 and the court ordered a further hearing. It was undisputed that Stone introduced the undercover agent to the defendants and was present at the transactions which form the subject matter of the indictment; and was also present when the defendants made certain incriminating admissions set forth in paragraphs 1 and 2 of "In camera exhibit 1" considered by the court in connection with defendants' motions for severance under Rule 14 (as to which an order was also made on September 6). Defense counsel argued that the action should be dismissed on authority of Roviaro v. United States, 353 U.S. 53, 61, 77 S.Ct. 623, 1 L.Ed.2d 639, on the ground that disclosure of Stone's identity and his testimony would be relevant and helpful to the defense of the accuseds and essential to a fair determination of the cause, and also under principles stated in United States v. D'Angiolillo, supra, for refusing to disclose Stone's whereabouts and cooperate in securing his appearance.

The court ruled at the conclusion of the first hearing on September 9, citing King v. United States, 9 Cir., 1965, 348 F.2d 814, 819, and Ruiz v. United States, 9 Cir., 1967, 380 F.2d 17, 18, that the defendants would be required to make a further showing of how Stone's testimony could assist their defense. The court ruled that it would conduct a further pretrial hearing and that, should the defendants choose to testify, nothing said by them might be used against them either directly or indirectly at the trial.[2] At the continued hearing both defendants

---

1. Stone was no mere tipster; it would be more accurate to call him a missing witness, as will appear.

2. Defense counsel objected to the court's refusal to order dismissal without further hearing.

testified and a cousin of theirs also testified. No witnesses were called by the Government. The defendant Hubert Waters testified that a man whom he knew by the name Stone had done a favor for him about two months previously, in January 1968, when he helped arrange bail for him in another case;[3] and that he procured the narcotics for Stone in transactions which are the subject of this case only after Stone reminded him that he owed Stone a favor "because I went to bat for you" on the occasion of Waters' prior difficulty. Edith Waters testified that before she sold Stone narcotics he requested her assistance in procuring narcotics on several occasions, at least a half dozen times; that she kept putting him off with one excuse or another because she was "quite sure he was not right" and believed him to be a law enforcement official. A cousin of the Waterses testified that Stone telephoned the residence at which she and the defendants resided on numerous occasions beginning during the first week of March 1968, sometimes phoning as often as ten times daily, in efforts to contact the defendants.

Roviaro v. United States, supra, 353 U.S. at p. 62, 77 S.Ct. at p. 629 requires that the court consider "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." The crimes here charged are serious and convictions carry with them minimum mandatory sentences pursuant to 26 U.S.C. § 7237. As in the Roviaro case, Stone is the defendants' one material witness unless they waive their constitutional right not to take the stand in their own defense. The previous relationship of Stone and Hubert Waters, which prompted Stone to say, "You owe me a favor" in connection with his requesting the defendant to procure narcotics for him certainly warrants efforts by defense counsel to raise the defense of entrapment. See Kadis v. United States, 1 Cir., 1967, 373 F.2d 370, 374. Stone's persistent pursuit of the defendant Edith Waters and his repeated phone calls to their residence also indicate that his testimony might be helpful to the defense. Furthermore Stone was present when, according to the Government, the defendants made incriminating statements to the investigating agent. Paraphrasing the opinion in the Roviaro case, 353 U.S. at p. 64, 77 S.Ct. 623, Stone is the only person other than the defendants who can controvert, explain or amplify the Government witness's report of these important conversations.

It may be, as forcefully asserted by the Government, that the evidence introduced by the defendants at the September 9 hearing would be insufficient to raise an issue of entrapment at the trial, i. e., to show that the Government agent went beyond a simple request and pleaded or argued with the defendants. However, it does not follow that, aided by Stone's testimony and cross-examination of Government witnesses, the defendants will be similarly unsuccessful at the trial in raising an entrapment issue for determination by the jury. The question before the court at this juncture is not whether the defendants showed "some evidence" of entrapment as defined in Kadis v. United States, supra, but rather whether they showed that Stone's possible testimony "may be relevant and helpful to the accused's defense." Roviaro v. United States, supra, 353 U.S. at p. 62, 77 S.Ct. at p. 628. The court finds that they have made such a showing and that entrapment is a "possible defense" which may be raised at the trial plausibly and in good faith.

Another relevant factor is the Government's failure to amplify its assertion that Stone or his family might be endangered by public disclosure. In thus

---

3. It is odd that Hubert Waters would not know the true name of the man who came to his assistance at the police station in January 1968 unless, of course, Stone was already collaborating with investigating agents at that time.

far declining to comply with the court's order of September 6 the Government appears to be more concerned about abiding by an agreement between Stone and the investigative agents than with his safety.

Accordingly it is ordered that the prosecution be dismissed unless, within two days after receipt of this memorandum and order, the Government disclose Stone's true identity to defense counsel and undertake to arrange a private meeting between Stone and defense counsel, in which event the case shall stand for trial.