**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KHALIF GOLDWIRE, | : | |
| | : | |
| Appellant. | : | No. 2580 EDA 2018 |

Appeal from the Judgment of Sentence Entered, April 12, 2018,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0006612-2015.

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and STEVENS*, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:                **FILED NOVEMBER 06, 2019**

Khalif Goldwire appeals from the judgment of sentence imposed following his conviction of possession with intent to deliver a controlled substance ("PWID").[1]  We affirm.

The trial court summarized the relevant facts as follows:

> In April of 2015, the Narcotics Field Unit of the Philadelphia Police Department was conducting surveillance of a residence at 3820 Wallace Street in Philadelphia and using the assistance of a confidential informant [("CI")].  On April 16, 2015, Officer [Gregory] Stevens instructed the [CI] to call telephone number (215) 303-6647.  After a male answered the phone, had a drug-related conversation with the [CI], and confirmed that he was home, the [CI] was given prerecorded buy money and sent to the residence.  Officer Stevens witnessed the [CI] knock on the door of the residence, [Goldwire] open the door, and then the [CI] and [Goldwire] enter the residence together.  The [CI] left the

---

[1] 35 Pa.C.S.A. § 780-113(a)(30).

---

*   Former Justice specially assigned to the Superior Court.

residence approximately three minutes later and returned to Officer Stevens, turning over two packets of crack cocaine.

On April 21, 2015, Officer Stevens again had the [CI] call the same number that he called for the previous buy, and again, a male answered the phone and said that he was home. The [CI] was given prerecorded buy money and sent to the residence. Officer [Jason] Yerges, who was assisting Officer Stevens, witnessed the [CI] approach [Goldwire], who was sitting outside of the residence, and hand [Goldwire] the buy money. [Goldwire] and the [CI] then went into the residence, and the [CI] left approximately two minutes later. The [CI] then returned to Officer Yerges and turned over two packets of crack cocaine.

On April 30, 2015, Officer Stevens again had the [CI] call the same number that he had called for the two previous buys. Again, a male answered and said that he was home, and again the [CI] was given prerecorded buy money and sent to the residence. As the [CI] approached the residence, Officer Stevens saw [Goldwire] leave the residence and stand on the front steps. When the [CI] approached [Goldwire], the [CI] gave [Goldwire] the prerecorded buy money and [Goldwire] in exchange handed the [CI] some small objects, which Officer Stevens believed to be narcotics. The [CI] then returned to Officer Stevens and gave the officer four packets of crack cocaine.

On May 1, 2015, Philadelphia police executed a search warrant at 3820 Wallace Street. When police were approaching the residence, [Goldwire] was leaving the location and carrying two trash bags. [Goldwire] was arrested and police searched his person, recovering a cell phone, $204, and a key that unlocked the front door of the residence. Officer Stevens dialed the telephone number that the [CI] had called for each of the controlled buys, and confirmed that it was the number for the cell phone that they had just recovered from [Goldwire's] person. A search of the trash bags revealed that one bag contained large clear vials topped with blue caps, while the other contained construction remnants. In addition, in their search of the residence, police recovered a loaded 9mm handgun, a bag of ammunition, a bag of marijuana, and a duffel bag containing a digital scale, large clear vials topped with blue caps that were filled with marijuana, and fifteen packets of crack cocaine.

Trial Court Opinion, 12/18/18, at 2-4 (citations to the record omitted).

Goldwire was arrested and charged with PWID, along with various other drug and firearms offenses. Goldwire filed a pretrial motion seeking to compel the Commonwealth to disclose the identity of the CI. He also filed a motion to dismiss all charges pursuant to Pa.R.Crim.P. 600(A). The trial court denied both motions. A jury trial commenced on February 6, 2018, and Goldwire renewed his Rule 600 motion on that date, which the trial court denied. At the conclusion of trial, the jury convicted Goldwire of one count of PWID.[2] The trial court sentenced him to one and one-half to four years of imprisonment, followed by three years of probation. Goldwire filed a timely post-sentence motion, which the trial court denied. Goldwire thereafter filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Goldwire raises three issues for our review:

A. Did two lower courts err in denying separate motions to dismiss under Rule 600(A), where the Commonwealth failed to adequately prepare for its witness's schedules and forced [Goldwire] to wait nearly 17 months extra for trial simply because Commonwealth witnesses had pre-planned events?

B. Did the lower court err in deny [sic] [Goldwire's] motion to compel the Commonwealth to produce the identity of its [CI] where the [CI] was the sole independent witness, it was a participant in the crime, the Commonwealth's witnesses' credibility were called into question, and the Commonwealth failed to establish that the [CI] would be in danger should his identity be known?

_____

[2] Goldwire was acquitted of possession of a firearm with an altered serial number. A judgment of acquittal was subsequently granted as to the charge of possession of a firearm prohibited. The remaining charges were *nolle prossed*.

C. Did the lower court err in admitting a PennDOT record purporting to show [Goldwire's] residence as the home under investigation where that record was hearsay and did not qualify as a record of regularly conducted activity?

Goldwire's Brief at 4.

In his first issue, Goldwire claims the trial court abused its discretion in denying his Rule 600 motions. When reviewing a trial court's Rule 600 decisions, an appellate court will reverse only if the trial court abused its discretion. **Commonwealth v. Bradford**, 46 A.3d 693, 700 (Pa. 2012). "An appellate court will not find an abuse of discretion 'based on a mere error of judgment, but rather . . . where the [trial] court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.'" **Commonwealth v. Gill**, 206 A.3d 459, 466-67 (Pa. 2019) (citation omitted). Our scope of review is limited to the record evidence from the Rule 600 hearing and the findings of the lower court, viewed in the light most favorable to the prevailing party. **Id**.

In relevant part, Rule 600 requires that trial shall commence within 365 days from the date on which the complaint is filed. **See** Pa.R.Crim.P. 600(A)(2)(a). This straightforward calculation is known as the mechanical run date. **Commonwealth v. Thompson**, 136 A.3d 178, 182 (Pa. Super. 2016). However, the Rule further states that "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the

time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1). Thus, the trial court must determine whether any excludable time exists pursuant to Rule 600(C), and then add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date. *Commonwealth v. Wendel*, 165 A.3d 952, 956 (Pa. Super. 2017); *see also Commonwealth v. Ramos*, 936 A.2d 1097 (Pa. Super. 2007) (explaining that excusable delay is a legal construct that takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence).

If the trial takes place after the adjusted run date, we apply the due diligence analysis set forth in Rule 600(D). *Wendel*, 165 A.3d at 956. "Due diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." *Commonwealth v. Selenski*, 994 A.2d 1083, 1089 (Pa. 2010). The Commonwealth has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence. *Commonwealth v. Bradford*, 46 A.3d at 701.

Goldwire contends that, because the criminal complaint was filed on May 2, 2015, the mechanical run date was May 2, 2016.[3] He argues that the Commonwealth caused a delay of 319 days by requesting a continuance on August 15, 2016, resulting in a new trial date of October 18, 2016.[4] He claims that the Commonwealth was not ready to proceed on August 15, 2016, because a necessary police officer witness had training. Goldwire asserts that the Commonwealth failed to disclose the conflict prior to the scheduled trial date, and that, if it had attempted to reschedule in advance of the trial date, the delay might have been minimized.

Goldwire additionally claims that the Commonwealth caused a second delay of 189 days when it requested another continuance on August 1, 2017, resulting in a new trial date of February 6, 2018.[5] Goldwire argues that the Commonwealth was not ready to proceed on August 1, 2017, because it was not aware of the officer's vacation schedule. Goldwire asserts that the cumulative 508 days of delay caused by the Commonwealth were not

---

[3] Goldwire points out that, whereas the mechanical run date should have been May, 1, 2016, that date fell on a Sunday, thereby making the run date Monday, May 2, 2016. 1 Pa.C.S.A. § 1908.

[4] Clearly, the two-month period of time indicated by Goldwire does not total 319 days. Rather, it constitutes a period of sixty-four days.

[5] The docket reflects that the Commonwealth filed its motion for continuance on July 31, 2017, and that, upon granting that motion, the trial court rescheduled trial to February 5, 2018. The docket further reflects that on February 5, 2018, the trial date was moved to February 6, 2018, and jury selection began on that date.

J-A19025-19

excusable. According to Goldwire, the Commonwealth violated Rule 600 because it did not act diligently in securing trial dates that its own witness could not attend, resulting in unexcused delays totaling approximately seventeen months.

The trial court considered Goldwire's Rule 600 claims and determined that they lack merit. It explained its reasoning as follows:

> Here, the Commonwealth filed its complaint against [Goldwire] on May 2, 2015[,] making May 2, 2016[,] the mechanical run date. Trial was commenced on February 6, 2018. The record establishes, however, that there were multiple delays that were not attributable to a lack of Commonwealth due diligence. First, there were delays that clearly resulted from judicial delay: the period from the filing of the complaint on May 2, 2015[,] to May 18, 2015, which was the first date given for [Goldwire's] preliminary hearing; the period after the case was held for court on June 29, 2015[,] to [Goldwire's] arraignment on July 20, 2015; the period from the arraignment on July 20, 2015[,] to the first pre-trial conference on August 19, 2015; and the period, from October 18, 2016[,] to December 19, 2016, when the trial was continued to December because the [c]ourt had a scheduling conflict. In addition, some delay was attributable to [Goldwire], and therefore excludable: the period from August 19, 2015[,] to September 17, 2015, when [Goldwire] filed and litigated a motion to quash, and the period from December 19, 2016[,] to August 1, 2017, when the trial was continued because defense counsel was unavailable due to a scheduling conflict. These delays result in a total of 383 days that must be added to the mechanical run date.

> The [c]ourt also ruled to be excludable, over the objection of [Goldwire], three additional periods of delay. [Goldwire] contended that each of these periods of delay was caused by the Commonwealth's failure to act with due diligence. First, [Goldwire] argued that the period from June 9, 2015[,] to June 29, 2015, when [Goldwire's] preliminary hearing was continued because Officer Stevens was ill, should not be excusable. [fn]

fn. While the court docket states that the preliminary hearing was continued due to a "necessary officer not available," the Commonwealth clarified during the third hearing on [Goldwire's] motion to dismiss that its file indicated that Officer Stevens was unavailable because he was sick. The [c]ourt permitted the introduction of the file under the business records exception to the hearsay rule. **See** Pa.R.E. 803(6); N.T. 2/6/18 at 29; Commonwealth Exhibit 1.

However, "[i]t is well-settled that the Commonwealth cannot be held to be acting without due diligence when a witness becomes unavailable due to circumstances outside of its control." **Wendel**, 165 A.3d at 957 (internal quotations omitted). In addition, [Goldwire] argued that the 319-day period from October 1, 2015[,] to August 15, 2016[,] was not excusable because on October 1, 2015, the Commonwealth agreed to an August 15, 2016[,] trial date, but then requested a continuance on the day of trial due to the unavailability of Officer Stevens, who was in mandatory FBI training at the time. Similarly, [Goldwire] argued that the 189-day period from August 1, 2017[,] to the date that [Goldwire's] trial began, February 6, 2018, was not excusable since the Commonwealth requested a continuance from the August 1, 2017[,] trial date because Officer Stevens was on vacation. However, the Commonwealth represented to the [c]ourt that it was not aware of Officer Steven's FBI training or his scheduled vacation, because the officer was detailed to the FBI, and FBI scheduling does not appear in the Commonwealth's system. Accordingly, the [c]ourt found that the periods were excusable because the unavailability of Officer Stevens was due to circumstances outside of the Commonwealth's control and not attributable to a lack of due diligence. **See Wendel**, 165 A.3d at 957.

Accounting for the above delays, totaling 528 days, in addition to the 383 days of delay that were attributable to the [c]ourt and [Goldwire], leads to an adjusted run date of October 29, 2018, well after the actual trial date of February 6, 2018. Because the adjusted run date had not yet expired on the date that [Goldwire's] trial commenced, his Rule 600 motions were properly denied.

Trial Court Opinion, 12/18/18, at 5-7 (some citations to the record omitted, footnote in original).

We discern no abuse of discretion in the trial court's Rule 600 calculations and rulings. The only periods of delay that Goldwire challenges on appeal are attributable to the unavailability of Officer Stevens due to his mandatory FBI training and scheduled vacation. The trial court acted within its discretion in accepting the Commonwealth's representation that it was unaware of these conflicts in Officer Steven's schedule. Having determined that Officer Stevens became unavailable due to circumstances beyond the Commonwealth's control, the trial court did not err in determining that the delays caused by Officer Steven's unavailability were excusable. **See Wendel**, 165 A.3d at 957 (holding that officer's training was beyond the Commonwealth's control); **see also Commonwealth v. Staten**, 950 A.2d 1006 (Pa. Super. 2008) (where an arresting officer was assigned to serve warrants on the date scheduled for trial, the Commonwealth's request for a continuance was "excusable delay"); **Commonwealth v. Hyland**, 875 A.2d 1175 (Pa. Super. 2005) (where trooper, who was affiant and lead investigator, was deployed to Iraq, the time attributed thereto was "excusable delay" since it was beyond the control of the Commonwealth); **Commonwealth v. Brawner**, 553 A.2d 458 (Pa. Super. 1989) (where police officer's unavailability due to vacation was beyond the Commonwealth's control, the

extension of trial date was "excusable time"). Thus, Goldwire's first issue warrants no relief.

In his second issue, Goldwire claims the trial court erred in denying his motion to compel the Commonwealth to reveal the identity of its CI. Our standard of review of claims that a trial court erred in denying a request for disclosure of an informant's identity is confined to an abuse of discretion. ***See Commonwealth v. Washington***, 63 A.3d 797, 801 (Pa. Super. 2013).

The Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source. ***Commonwealth v. Marsh***, 997 A.2d 318, 321 (Pa. 2010); ***Commonwealth v. Bing***, 713 A.2d 56, 58 (Pa. 1998). In order to overcome this qualified privilege and obtain disclosure of a confidential informant's identity, a defendant must first establish, pursuant to Pa.R.Crim.P. 573(B)(2)(a)(i),[6] that the information sought is material to the preparation of

---

[6] Under Pennsylvania Rule of Criminal Procedure 573, a trial court has the discretion to require the Commonwealth to reveal the names and addresses of all eyewitnesses, including confidential informants, where a defendant makes a showing of material need and reasonableness:

> (a) In all court cases, except as otherwise provided in Rule 230 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:
>
> (i) the names and addresses of eyewitnesses....

Pa.R.Crim.P. 573(B)(2)(a)(i).

the defense and that the request is reasonable. ***Commonwealth v. Roebuck***, 681 A.2d 1279, 1283 (Pa. 1996). The defendant need not predict exactly what the informant will say, but he must demonstrate a reasonable possibility the informant could give evidence that would exonerate him. ***Id***. More than a mere assertion that disclosure of the informant's identity might be helpful is necessary. ***Commonwealth v. Herron***, 380 A.2d 1228, 1230 (Pa. 1977). To prove the information is material, "[t]he defendant must lay an evidentiary basis or foundation that the confidential informant possesses relevant information that will materially aid the defendant in presenting his or her defense and that the information is not obtainable from another source." ***Commonwealth v. Ellison***, 213 A.3d 312, 317 (Pa. Super. 2019) (quoting ***Commonwealth v. Hritz***, 663 A.2d 775, 780 (Pa. Super. 1995)).

Only after the defendant shows that the identity of the confidential informant is material to the defense is the trial court required to exercise its discretion to determine whether the information should be revealed by balancing relevant factors. ***Bing***, 713 A.2d at 58; ***Roebuck***, 681 A.2d at 1283. The determination regarding whether disclosure should be made depends on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors essential to a fair balancing of the competing interests involved. ***Marsh***, 997 A.2d at 321. This balance is initially weighted toward the Commonwealth in order to

preserve the public's interest in effective law enforcement. *Bing*, 713 A.2d at 58. However, the balance militates in favor of disclosure where "the only eyewitness to the entire transaction other than the confidential informant was a police officer." *Roebuck*, 681 A.2d at 1284 (citation omitted). On the other hand, the fact that there were numerous observations of the seller, although not legally determinative, weighs in favor of maintaining the Commonwealth's privilege. *Bing*, 713 A.2d at 60; *Roebuck*, 681 A.2d at 1284 n.8. Additionally, the safety of the confidential informant is a controlling factor in determining whether to reveal his identity. *Marsh*, 997 A.2d at 324.

Goldwire claims that he established that disclosure of the CI's identity was material to his defense and reasonable. He asserts that when the CI made buys, a single officer surveilled the transaction from a distance of approximately 80 feet, and that the line of sight for the surveillance was potentially compromised. Goldwire argues that the credibility of all of the officers involved and their ability to properly identify the seller were called into question by a neighbor, who testified at the motions hearing that there was nothing in Goldwire's hands as he walked out of the house immediately before he was arrested. Goldwire also points out that he was not arrested immediately following any of the purchases, but instead was arrested on the day after the last transaction under circumstances that were in dispute, given the neighbor's testimony. Goldwire contends that the Commonwealth failed to establish any specific danger that the CI might suffer if the CI's identity was

disclosed, and that Officer Stevens, who was cross-deputized with a federal

agency, had additional resources to protect the CI.

The trial court addressed Goldwire's second issue and determined that

it lacks merit. It explained its reasoning as follows:

> At a hearing held on the motion, . . . Officer Stevens testified that during two of the controlled buys, on April 16, 2015[,] and April 30, 2015, he was conducting surveillance approximately eighty-feet away from the property and personally observed the interactions between [Goldwire] and the [CI]. Moreover, Officer Stevens testified that during the April 21, 2015[,] controlled buy, Officer Yerges and Officer Woertz conducted surveillance and observed the interactions between [Goldwire] and the [CI], and reported the information back to Officer Stevens. Finally, the officer confirmed that during at least two of the buys, there were civilian males across the street from the 3820 Wallace Street property.
>
> In addition to the Commonwealth's evidence, [Goldwire] presented the testimony of Cordella McFadden, who stated that she was present when police executed the search warrant at 3820 Wallace Street. McFadden testified that she was outside when she heard an officer say, "There he go," and then saw an officer run towards [Goldwire], who was standing outside his property.
>
> Based on the above evidence, the [c]ourt properly found that [Goldwire] did not make the requisite threshold showing. Not only did Officer Stevens personally observe two of the controlled buys, but two other officers observed [Goldwire] in the third controlled buy, corroborating Officer Stevens's identification. In addition, McFadden's testimony that officers recognized [Goldwire] immediately prior to executing the search warrant, corroborated the officers' prior identifications. Finally, there were multiple civilians who were at the scene during these buys and could have been called as witnesses.
>
> Furthermore, although [Goldwire] failed to make the requisite threshold showing, the [c]ourt noted that in any event it would be a danger to reveal the informant's identity, as Officer Stevens explained that in his experience, other informants who have had their identities compromised were "beat up, stabbed,

- 13 -

one had... [h]is car firebombed.  One was actually killed[.]"  Thus, the [c]ourt properly denied [Goldwire's] motion to compel disclosure of the [CI].

Trial Court Opinion, 12/18/18, at 9-10 (citations to the record omitted).

We discern no abuse of discretion by the trial court in denying Goldwire's motion to compel disclosure of the CI's identity.  Goldwire failed to make a threshold showing that the CI possessed relevant information that would materially aid him in presenting his defense, and that the information was not obtainable from another source.  **See Ellison**, 213 A.3d at 317.  Indeed, he provides no explanation whatsoever as to what type of information the CI could have possessed that would have aided his case.  As Goldwire failed to demonstrate a reasonable possibility the CI could give evidence that would exonerate him, the trial court was not required to balance relevant factors before denying his motion to compel.  **Bing**, 713 A.2d at 58; **Roebuck**, 681 A.2d at 1283.  Accordingly, Goldwire's second issue merits no relief.[7]

In his third issue, Goldwire claims the trial court abused its discretion in admitting into evidence a PennDOT record (Exhibit 27) which showed

_____

[7] Moreover, even if Goldwire had made the requisite threshold showing, several factors would have weighed in favor of maintaining the Commonwealth's privilege.  For example, Officer Stevens's identification of Goldwire as the seller was corroborated by Officers Yerges and Woertz.  **See Bing**, 713 A.2d at 60 (holding that numerous observations of the seller weighs in favor of maintaining the Commonwealth's privilege).  Additionally, Officer Stevens testified regarding the potential dangers faced by the CI if his identity was disclosed.  **See Marsh**, 997 A.2d at 324 (holding that safety of the confidential informant is a controlling factor in determining whether to reveal his identity).

Goldwire's address as 3820 Wallace Street, Philadelphia, PA 19104. Our standard of review concerning the admissibility of evidence is well-settled: "The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion." *Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015).

Goldwire argues the PennDOT record was improperly introduced through the testimony of Officer Stevens, after he testified that he conducted a driver's license check on Goldwire. According to Goldwire, the PennDOT record was not adequately certified because the Commonwealth did not qualify Officer Stevens as an appropriate custodian or other qualified witness.[8] On this basis, he argues that the trial court abused its discretion in admitting the PennDOT record, which constitutes inadmissible hearsay evidence. Goldwire further contends that the erroneous admission of the PennDOT record was not harmless because it was "the primary vehicle by which the Commonwealth could show dominion and control over the contraband stored in the house." Goldwire's Brief at 25-26.

---

[8] In making this argument, Goldwire apparently claims that the PennDOT record was not admissible as a business record under Pa.R.E. 803(6). However, as we explain below, the trial court did not admit the PennDOT record under Rule 803(6). Thus, we need not consider that exception to the hearsay rule.

The trial court addressed Goldwire's third issue and determined that it lacks merit. It explained its reasoning as follows:

> At trial, over [Goldwire's] objection, the [c]ourt permitted the Commonwealth to introduce [Goldwire's] driver's license abstract from 2016, which was produced by PennD[OT] and obtained through the Pennsylvania Justice Network ("JNET"). The abstract showed that [Goldwire's] address at the time was 3820 Wallace Street.
>
> The Pennsylvania Motor Vehicle Code provides that any abstract of records maintained by PennD[OT] are [sic] admissible in evidence when offered by any authorized user of such records. 75 Pa.C.S. § 6328.[9]  Authorized users include local police and district attorneys. **Id**.  Accordingly, the driver's license abstract from PennD[OT] was properly admitted. **See Commonwealth v. Carr**, 887 A.2d 782, 783 (Pa. Super. 2005).

Trial Court Opinion, 12/18/18, at 11-12 (citations to the record omitted, footnote added).

_____

[9] Section 6328 provides:

> The department may send to any authorized user by electronic transmission any certification of record or abstract of records maintained by the department.  Permissible uses shall include, but not be limited to, certifications of driving records and motor vehicle records.  The department may also certify electronically any documents certified to it electronically.  Authorized users include State and local police, district attorneys, employees of the department and the Office of Attorney General and other persons or entities as determined by the department and listed by notice in the Pennsylvania Bulletin. **In any proceeding before the courts or administrative bodies of this Commonwealth, documents certified by the department under this section and offered into evidence by an authorized user shall be admissible into evidence**.

75 Pa.C.S. § 6328 (emphasis added).

We discern no abuse of discretion by the trial court in determining that the PennDOT record was admissible pursuant section 6328. As a member of the Philadelphia Police Department, Officer Stevens was permitted to introduce the PennDOT record. *See Carr*, 887 A.2d at 783 (holding that the trial court did not err in permitting the officer to produce appellant's driving record via a JNET report, since "information received as a result of that access can be presented in court by any member of the department because the department is, by statute, defined as an authorized user"). Accordingly, Goldwire's final issue warrants no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/19