J.S45039/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,    :    IN THE SUPERIOR COURT OF
                                      :             PENNSYLVANIA
                Appellee    :
                                        :
             v.                   :
                                        :
                                        :
BRANDON R. HARRELL,            :
                                        :
               Appellant    :       No. 2428 EDA 2013

Appeal from the Judgment of Sentence July 22, 2013
In the Court of Common Pleas of Bucks County
Criminal Division No(s).: CP-09-CR-0006412-2012

BEFORE: BOWES, WECHT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED APRIL 22, 2015**

Appellant, Brandon R. Harrell, appeals from the judgment of sentence entered in the Bucks County Court of Common Pleas following a jury trial and his convictions for manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance[1] ("PWI"), possession of a controlled substance,[2] and possession of drug paraphernalia.[3] Appellant contends the trial court erred in (1) failing to dismiss the prosecution for

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

[2] 35 P.S. § 780-113(a)(16).

[3] 35 P.S. § 780-113(a)(32).

pre-arrest delay, (2) failing to require the Commonwealth to disclose the identity of the confidential informant, and (3) sustaining an objection when defense counsel asked the forensic chemist why she was no longer with the Bucks County Crime Lab. Additionally, Appellant claims the court abused its discretion in allowing both forensic chemists to testify that the substance in question was cocaine when neither rendered an opinion to a reasonable degree of scientific certainty. We affirm.

The trial court summarized the facts of this case as follows:

> Pursuant to a lead from a confidential informant ("CI"), the Bristol Township Police Department conducted a narcotics investigation targeting Appellant. The CI and Officer Dino Lepore of the Bristol Township Police Department set up a drug sale with Appellant over the phone. The sale was to take place in the area of Pond and Washington Streets in Bristol Borough, in Bucks County, Pennsylvania, on November 4, 2010.
>
> On November 4, 2010[,] Officer Lepore acted in an undercover capacity and met the CI at a predetermined location. Officer Lepore conducted a pat down search of the CI and subsequently searched his vehicle. He determined the CI did not have any money or contraband on his person or in his vehicle prior to meeting Appellant. Officer Lepore then gave the CI $100 to use in the drug sale.[4]
>
> Officer Lepore and the CI traveled from the predetermined location to a parking lot on the corner [of] Pond and Washington Streets in Bristol Borough and parked the vehicle. The CI was seated in the driver's seat and Officer Lepore was seated in the passenger's seat. After being parked for a few minutes, Appellant drove up

---

[4] As set forth in further detail, *infra*, the transaction was observed by Sergeant Joseph Moors and Officer Elifa Soto.

in a Nissan vehicle and parked next to the CI's vehicle on the driver's side. Appellant exited the Nissan vehicle and walked across the front of the CI's vehicle to the passenger's side door. Upon realizing Officer Lepore was in the passenger's seat, Appellant entered the vehicle from the rear passenger's side door. The CI introduced Officer Lepore to Appellant as his co-worker, at which time Officer Lepore turned around to shake Appellant's hand. Officer Lepore was not dressed in his police uniform, but was dressed in plainclothes at this time.

While seated in the CI's vehicle, the dome light was turned on and Officer Lepore saw Appellant extend his right hand and give the CI three glassine baggies that contained a white, rock-like substance. The CI took the baggies and placed them in the center console of the vehicle. The CI then turned around and handed Appellant $100 that was supplied by the Bucks County Narcotics Fund. Appellant then left the vehicle. The entire encounter took about three to four minutes.

The CI and Officer Lepore drove back to the predetermined location to meet with two other police officers. Once there, the CI turned over the glassine baggies to Sergeant Joseph Moors, the evidence custodian, who processed the evidence. Appellant was not arrested that day because the CI was to be used in future drugs buys. . . .

Sergeant Moors was the evidence custodian and received the glassine baggies from the CI on November 4, 2010. He brought the evidence to the Bucks County Crime Lab where it was tested. Sergeant Moors also ran a license plate check on the Nissan vehicle present at the drug buy and the vehicle was registered to Appellant. On April 12, 2012, Pennsylvania State Police arrested Appellant.

Trial Ct. Op., 12/10/13, at 2-4 (references to record omitted).

Following a jury trial,[5] Appellant was found guilty of all charges. Appellant was sentenced to eleven-and-one-half to twenty three months' imprisonment. This timely appeal followed. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal[6] and the trial court filed a responsive opinion.

Appellant raises the following issues for our review:

> A. Did the Lower Court err in failing to dismiss the prosecution for pre-arrest delay?
>
> B. Did the Lower Court err in failing to require the Commonwealth to disclose the identity of the confidential informant?
>
> C. Did the Lower Court err in sustaining an objection when defense counsel asked forensic chemist, Carol Sendecki "Why are you no longer with the Bucks County Crime Lab?"
>
> D. Did the Lower Court abuse its discretion in allowing both forensic chemists to testify that the substance in question was cocaine, when neither rendered an opinion to a reasonable degree of scientific certainty and did this error affect the sufficiency of the evidence?

---

[5] Appellant was also charged in connection with a drug buy that occurred on November 12, 2010. Following the consolidated jury trial, he was found not guilty of the charges stemming from the November 12th buy. Trial Ct. Op. at 2.

[6] We note that Appellant also raised the following issue in his Pa.R.A.P. 1925(b) statement: "The Lower Court erred in failing to instruct the jury regarding the testimony of an expert witness, as both forensic chemists rendered expert opinions." Appellant's Pa.R.A.P. 1925(b) Statement, 10/8/13, at 2. This issue was abandoned on appeal as it was not raised in Appellant's brief. *See Commonwealth v. Dunphy*, 20 A.3d 1215, 1218 (Pa. Super. 2011).

Appellant's Brief at 5.

First, Appellant contends the trial court erred in failing to dismiss the criminal complaint due to pre-arrest delay.[7] Appellant avers his right to due process was violated by the pre-arrest delay.[8] *Id.* at 11. He claims he was prejudiced due to the delay because "[h]e was unable to specifically state his whereabouts on the night[ ] in question." *Id.* at 14. Additionally, he avers

---

[7] On December 28, 2012, Appellant filed an omnibus pre-trial motion to dismiss based upon pre-arrest delay. Following a hearing, the trial court denied the motion. *See* N.T., 3/21/13, at 81.

[8] We note Appellant argues "where the evidence shows that the delay was the product of intentional, bad faith, or reckless conduct by the prosecution a court must find a violation of due process," citing *Commonwealth v. Scher*, 803 A.2d 1204 (Pa. 2002) (plurality). Appellant's Brief at 12. In *Commonwealth v. Wright*, 865 A.2d 894 (Pa. Super. 2004), discussing the divergent views of the members of the Pennsylvania Supreme Court, this Court opined:

> Although the Pennsylvania Supreme Court, in *Commonwealth v. Scher*, [ ] 803 A.2d 1204 ([Pa.] 2002) (Opinion Announcing the Judgment of the Court), . . . sought to resolve the issue confronted by trial courts when there has been a significant period of delay between a crime and the prosecution of that crime, that Court was **unable to agree on a controlling standard as to when such delay constitutes a due process violation**.

*Id.* at 900 (emphasis added and footnote omitted). *Scher* was a plurality opinion. "While the ultimate order of a plurality opinion, *i.e.*, an affirmance or reversal, is binding on the parties in that particular case, legal conclusions and/or reasoning employed by a plurality certainly do not constitute binding authority." *Commonwealth v. Brown*, 23 A.3d 544, 556 (Pa. Super. 2011) (*en banc*) (citation omitted). Therefore, Appellant's reliance upon *Scher* is unavailing. *See id.*

prejudice because his girlfriend, Natalie Wolfe, could have served as an alibi witness for him but, due to the delay, she was unable to do so. *Id.* at 13, 15.

"As this is an issue involving a constitutional right, it is a question of law; thus, our standard of review is *de novo*, and our scope of review is plenary." *Commonwealth v. Baldwin*, 58 A.3d 754, 762 (Pa. 2012). The Pennsylvania Supreme Court holds

> a defendant's due process right against pre-arrest delay is limited; law enforcement is not required to make an arrest as soon as enough evidence has been accumulated to constitute probable cause, or even proof beyond a reasonable doubt. Indeed, there is no right to be arrested or right to prosecution. Only if a defendant can show "that **the passing of time caused actual prejudice and that the prosecution lacked sufficient and proper reasons for postponing the prosecution**," is he entitled to relief. As such, a due process violation will be found only in "extreme cases" when there are "no valid reasons" for the delay.

*Commonwealth v. Simpson*, 66 A.3d 253, 283 (Pa. 2013) (emphasis added and citations omitted).

In *Simpson*, the defendant asserted "he was prejudiced because, after the three-year delay, he could no longer recall his whereabouts at the time of the crime or find any witness who could testify as to his whereabouts . . . ." *Id.* at 283. The *Simpson* Court noted that "the gravamen of Appellant's assertion of prejudice—that he could not remember where he was on the night in question, depriving him of alibi witnesses—was rejected in [*United States v.* ] *Marion*, [404 U.S. 307, 325-26 (1971)]." *Id.*

Instantly, the trial court held a hearing on the omnibus pre-trial motion for dismissal of the charges against Appellant for pre-arrest delay. Officer Lepore testified the CI worked on other cases for Bristol Borough. N.T., 3/21/13, at 11. There were ten parties and approximately twenty-five controlled buys after the November 4th buy from Appellant. *Id.* at 12. Undercover officers are paired with CI's in order to make a buy. *Id.* at 12-13. If the identity of the CI was exposed, both the CI and the undercover officer's safety would be in danger. *Id.* at 13. The reason for the pre-arrest delay was the ongoing drug purchasing activity of the CI and undercover officer during this time period. *Id.*

Appellant testified that at the time he learned of the charges against him, he was living with his girlfriend. *Id.* at 34. He was preparing to have surgery on his left ankle. *Id.* He "was home most of the night." *Id.* at 35. He did not have a cell phone because he was unemployed and waiting for his unemployment and workers' compensation. *Id.* He could not remember specifically where he was on November 4, 2010. *Id.* at 38.

We find the Commonwealth had valid reasons for the pre-arrest delay, and thus, Appellant's constitutional rights were not violated. *See Simpson*, 66 A.3d at 283. Appellant has not shown actual prejudice. Our Supreme Court has found that the averment that a defendant could not remember his whereabouts at the time of the crime and could not find witnesses to testify as to his whereabouts did not show he was prejudiced by the delay. *See id.*

Next, Appellant argues the court erred in failing to require the Commonwealth to disclose the identity of the CI.[9] Appellant concedes that "[i]n the case at hand, admittedly, other corroboration of the undercover officer's testimony exists for the November 4th transaction, albeit contradictory." Appellant's Brief at 21. Appellant asserts that his defense at trial was mistaken identity. *Id.* at 23.

"Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion." *Commonwealth v. Watson*, 69 A.3d 605, 607 (Pa. Super. 2013) (citation omitted). In *Watson*, one police officer observed the drug transaction between the defendant and the CI. *Id.* at 606. The defendant claimed the court erred in denying his request for disclosure of the identity of the CI because his defense was mistaken identity. *Id.* at 607. This Court rejected the defendant's argument in *Watson* because "officers executing the warrant observed him throw multiple vials of crack cocaine under a parked vehicle in an obvious attempt to avoid arrest." *Id.* at 609.

This Court opined:

> Under Pennsylvania Rule of Criminal Procedure 573, a trial court has the discretion to require the Commonwealth to reveal the names and addresses of all eyewitnesses, including confidential informants, where a defendant makes a showing of material need and reasonableness:

---

[9] On November 16, 2012, Appellant filed a pre-trial motion to disclose the identity of the CI. Following a hearing, the court denied the motion. *See* N.T., 3/21/13, at 81-82.

> (a) In all court cases, except as otherwise provided in Rule 230 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:
>
> (i) the names and addresses of eyewitnesses. . . .

Pa.R.Crim.P. 573(B)(2)(a)(i).

The Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source. In order to overcome this qualified privilege and obtain disclosure of a confidential informant's identity, a defendant must first establish, pursuant to Rule 573(B)(2)(a)(i), that the information sought is material to the preparation of the defense and that the request is reasonable. Only after the defendant shows that the identity of the confidential informant is material to the defense is the trial court required to exercise its discretion to determine whether the information should be revealed by balancing relevant factors, which are initially weighted toward the Commonwealth.

In striking the proper balance, the court must consider the following principles:

> A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations[,] the trial court may require disclosure and, if the Government withholds the information, dismiss the action.

> [N]o fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.
>
> *Commonwealth v. Marsh*, [ ] 997 A.2d 318, 321–322 ([Pa.] 2010).

*Id.* at 607-08 (some citations omitted).

The trial court found that the officers involved in the drug buy had the opportunity to observe Appellant. The court concluded based upon the evidence, the "likelihood of misidentification is so minimal that the qualified privilege of the Commonwealth to protect the identity of the CI was not overcome." Trial Ct. Op. at 10. We agree no relief is due.

At trial, Officer Lepore testified that he saw Appellant when he walked up to the passenger side of the vehicle he was seated in and knocked on the window. N.T., 3/25/13, at 17. Appellant got into the vehicle and Officer Lepore shook hands with him. *Id.* at 18. He saw Appellant hand the CI the "three glassine baggies that contained a white rock-like substance." *Id.* at 18-19. He stated that he was "[o]ne hundred percent positive" that Appellant was the man he shook hands with on November 4th. *Id.* at 20.

Sergeant Moors testified he saw Appellant arrive from his seat in the passenger side of the undercover vehicle. N.T., 3/22/13, at 37. He was in

the vehicle with Officer Elifa Soto. *Id.* He saw Appellant walk up to the van. *Id.* at 38. Appellant was approximately fifteen to twenty feet from the undercover vehicle. *Id.* He testified that there was no question that Appellant was "definitely the person who came to the van that night." *Id.* at 39. He saw Appellant for "a couple minutes" after he exited the van. *Id.* at 40. There was no question whatsoever that the person he saw leave the van was Appellant. *Id.*

Officer Soto saw Appellant walk up to the van on November 4th. *Id.* at 150. Officer Soto identified Appellant as the person he saw without any doubt. *Id.* at 151. After Appellant left the scene, he met with the CI, Officer Lepore and Sergeant Moors. *Id.* He stated "Officer Lepore had the drugs and handed it over to Sergeant Moors." *Id.* at 152.

Instantly, Officers Soto and Lepore and Sergeant Moors observed Appellant and positively identified him as the person involved in the drug buy. We discern no abuse of discretion by the trial court in denying the request to disclose the identity of the confidential informant. *See Watson*, 69 A.3d at 609. As in *Watson*, we reject Appellant's claim that his defense of mistaken identity required disclosure, given the observations of the police officers. *See id.* at 609.

Next, Appellant claims that the court erred in sustaining an objection when defense counsel asked forensic chemist Carol Sendecki "Why are you no longer with the Bucks County Crime Lab?" Appellant's Brief at 25.

Appellant avers the evidence was relevant because it was intended "to ascertain whether her termination of employment at the Bucks County Crime Lab was potentially related to the handling of evidence . . . ." *Id.* at 27.

As a prefatory matter, we consider whether Appellant has waived this issue. On appeal, Appellant fails to cite to the place in the record where this claim was preserved before the trial court. *See* Pa.R.A.P. 2117(c) (requiring statement of case to specify state of proceedings at which issue sought to be reviewed on appeal was raised), 2119(e) (requiring same of argument section of appellate brief); *Commonwealth v. Fransen*, 42 A.3d 1100, 1106 n.11 (Pa. Super. 2012) (*en banc*) ("Failing to direct this Court to specific portions of the record in support of an argument violates Pa.R.A.P. 2119 (c) [and for] that reason alone, we could conclude this issue is waived."), *appeal denied*, 76 A.3d 538 (Pa. 2013). However, we don't find waiver on this basis.

Appellant did not file a post-sentence motion. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Instantly, however, the certified record does not reveal whether Appellant was apprised of the need to file post-sentence motions to preserve issues for appeal. In *Commonwealth v. Malovich*, 903 A.2d 1247 (Pa. Super. 2006), this Court opined:

> We will not conclude that [the a]ppellant forwent the opportunity to raise issues via post-sentence motions when the sentencing court did not tell him he could file such motions. Given that [the a]ppellant was unaware of the

need to preserve claims in a motion for reconsideration, we find that he has not waived those claims on appeal.

Moreover, we note that the Commonwealth has not argued waiver but, instead, has addressed [the a]ppellant's arguments. The Commonwealth's brief and the record give us ample opportunity for meaningful judicial review of these claims.

*Id.* at 1252 (citations omitted).

Given the absence of evidence that Appellant was advised of the need to preserve his claims in a post-trial motion, and the fact that the Commonwealth did not argue waiver, we decline to find the issue waived. *See id.*

Our standard of review is well-established:

The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of the evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

*Commonwealth v. Antidormi*, 84 A.3d 736, 749 (Pa. Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014), (citation omitted).

Pennsylvania Rule of Evidence 103 provides in pertinent part:

**(a) Preserving a Claim of Error.** A party may claim error in a ruling to admit or exclude evidence only:

- 13 -

* * *

> (2) if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.

Pa.R.E. 103(a)(2).[10]

Ms. Sendecki testified that she had worked for the Bucks County Crime Lab as a forensic chemist between November 17, 2010 and December 22, 2010. N.T., 3/25/13, at 45. Appellant's argument centers on the following exchange:

> [Defense counsel]: Ma'am, why are you no longer with the Bucks County Crime Lab?
>
> [Commonwealth]: I'll object to relevance.
>
> The Court: Sustained.

---

[10] We note the rule was rewritten on January 17, 2013. The prior rule provided:

> (a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling that admits or excludes evidence unless
>
> * * *
>
> (2) Offer of Proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or by motion in limine or was apparent from the context within which the evidence was offered.

Pa.R.E. 103(a)(2).

*Id.* at 57. Defense counsel resumed his cross-examination of the witness,

without an offer of proof. *See id.*

The trial court opined:

> This [c]ourt found that any evidence of why Ms. Sendecki was no longer at the Bucks County Crime Lab was not relevant to the current case. Absent an offer of proof from Defense Counsel that Ms. Sendecki's termination of employment at the Bucks County Crime Lab was directly related to the handling of evidence, which was not present here, such evidence is irrelevant and inadmissible. The objection by the Commonwealth was properly sustained.

Trial Ct. Op. at 11. We agree. Appellant does not aver "the substance was

apparent from the context." *See* Pa.R.Evid. 103(a)(2). We discern no

abuse of discretion. *See Antidormi*, 84 A.3d at 749.

Lastly, Appellant argues the trial court abused its discretion in

permitting both laboratory technicians, Ms. Sendecki and Joann Szpanka, to

testify that the substance in question was cocaine when neither rendered an

opinion to a reasonable degree of scientific certainty.[11] Appellant's Brief at

28. Appellant avers the court erred in admitting the testimony of Szanka

---

[11] We note Appellant contends "[t]his affected the sufficiency of the evidence to convict" him. Appellant's Brief at 28. Although not raised before the trial court, the sufficiency of the evidence can be raised for the first time on appeal. Pa.R.Crim.P. 606(A)(7). Appellant, however, did not raise this issue in his Pa.R.A.P. 1925(b) statement. "[W]e observe generally that issues not raised in a Rule 1925(b) statement will be deemed waived for review." *Commonwealth v. Hansley*, 24 A.3d 410, 415 (Pa. Super. 2011); *see* Pa.R.A.P. 1925(b)(4)(vii) (providing "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). Therefore, we find Appellant has waived the issue on appeal. *See* Pa.R.A.P. 1925(b)(4)(vii); *Hansley*, 24 A.3d at 415.

because she "should have been qualified and accepted as an expert." Appellant's Brief at 29.

"The admission of evidence is a matter vested within the sound discretion of the trial court . . . ." ***Antidormi***, 84 A.3d at 749.

> While **an expert need not use "magic words,"** the foundation of her opinion must still be sturdy. As our Supreme Court has emphasized, the expert must base the substance of her opinion on a reasonable degree of certainty instead of mere speculation. ***Commonwealth v. Spotz***,[ ] 756 A.2d 1139, 1150 ([Pa.] 2000) (forensic pathologist's testimony in first-degree murder trial as to victim's manner of death was properly based on reasonable degree of medical certainty, though **pathologist did not use those "magic words,**" where pathologist explained that victim had been shot in neck and chest, that amount of hemorrhage surrounding gunshot wounds indicated she was shot while she was alive, and that minimal hemorrhage surrounding other wounds indicated she was run over after she died).

***Commonwealth v. Gonzalez***,109 A.3d 711, 727 (Pa. Super. 2015) (emphases added).

As a prefatory matter, we consider whether Appellant has waived his claim regarding Ms. Sendecki. In ***Commonwealth v. Ballard***, 80 A.3d 380 (Pa. 2013), our Supreme Court held that appellant waived his claims regarding the testimony of a witness by failing to object at trial. ***Id***. at 406. Appellant does not cite to the place in the record where this claim was

preserved before the trial court.  **See** Pa.R.A.P. 2117(c).  Appellant did not object to her testimony at trial.[12]

The trial court opined:

> Ms. Sendecki, a forensic chemist at the Bucks county Crime Lab, also testified that the substance in question was cocaine.[13]  Testimony of Ms. Sendecki's qualifications as a forensic chemist, including her bachelor's degree in chemistry[14] and her almost thirty years' experience in the field,[15] were elicited on cross-examination by Defense Counsel.  On re-direct examination by the Commonwealth, Ms. Sendecki testified that she determined the substance to be cocaine.  Defense Counsel did not object to the witness testifying that the substance was cocaine on re-direct examination.  Counsel's failure to object to the testimony at trial constitutes a waiver and Appellant cannot raise this issue for the first time on [a]ppeal.

Trial Ct. Op. at 13.  We agree.

Even assuming, *arguendo*, that the claim was preserved, it is without merit.  Ms. Sendecki testified regarding the laboratory report she prepared. N.T., 3/25/13, at 46.  She was "qualified to be an expert witness in the analysis of drugs."  **Id.** at 65.  She concluded that the substance was cocaine.  **Id.** at 67.  An expert need not use "magic words."  **See Gonzalez**, 109 A.3d at 727.

---

[12] At the conclusion of Ms. Sendecki's testimony, the court asked defense counsel "Anything else . . . ?" and he replied, "No, Your Honor."  N.T., 3/25/13, at 71.

[13] **See** N.T., 3/25/13, at 67.

[14] **See** N.T., 3/25/13, at 51.

[15] **See** N.T., 3/25/13, at 50.

Appellant also contends the trial court erred in permitting Ms. Szpanka, a forensic analyst at the Bucks County Crime Lab, to testify that the substance in question was cocaine, without rendering an opinion to a reasonable degree of scientific certainty. Appellant's Brief at 28. He claims "the witness should have been qualified and accepted as an expert." *Id.* at 29. In support of his contention that the court erred in permitting her testimony without rendering an opinion, Appellant cites Pa.R.Evid. 702. *Id.* We find no relief is due.[16]

At trial, Ms. Szpanka testified for the Commonwealth. N.T., 3/22/13, at 82. On cross-examination, defense counsel asked if she had been certified as an expert and she stated that she had not. *Id.* at 116. Counsel stated he had no further questions. *Id.* The court requested a sidebar conference and the following exchange took place:

> The Court: Now, as I understand it, your position is you are not presenting her as an expert in the field of forensic analysis; is that correct?
>
> [The Commonwealth]: My original intent, yes, Your honor.
>
> The Court: Then how is it that you intend to go from how she went about conducting a test to providing the results?

---

[16] We note the trial court opined that Ms. Szapanka's "education and experience provide the necessary qualifications to be tendered as an expert. Permitting her to opine that the substance purchased was cocaine without having her tendered as an expert witness is harmless error, if any." Trial Ct. Op. at 13. "We may affirm the trial court on any ground." *Commonwealth v. Lynch*, 820 A.2d 728, 730 n.3 (Pa. Super. 2003).

[The Commonwealth]: Your Honor, this works the way it would have if someone were to just plug numbers into a calculator. She plugs the drugs into the machines, the machines come[ ] out with a result. It's not an opinion-based thing. She doesn't have to make guesses.

\* \* \*

[Defense Counsel]: But, Your Honor, she's giving an opinion because she writes in the report that this was cocaine and what the weight of it was, and that's an opinion. . . .

\* \* \*

The Court: I will allow her to testify as to what the results were that were provided by the equipment.

[Defense Counsel]: Your Honor, can I just have a clarification? Does that mean she's going to be able to testify that the substances are, in fact, cocaine?

The Court: If the machine gives the results that that's what it is, yes.

N.T., 3/22/13, at 117, 118, 119.

Ms. Szpanka testified, *inter alia*, as follows, without objection from defense counsel:

[The Commonwealth]: Did the analysis that you did . . . result in an output of determining what the specimens' chemical makeup was?

A: Yes.

Q: And on C-8,[17] what was the output chemical?

A: Cocaine Hydrochloride.

---

[17] C-8 was described by the witness as a drug envelope containing three clear Ziploc bags. N.T., 3/22/13, at 104, 112.

Q: And did that also determine a measurement of weight?

A: It did.

Q: And what was the measured weight?

A: I believe it was 1.25 grams.

Q: And was there a similar output on C-7[18] that determined what the chemical content of the specimen or specimens were?

A: Yes.

Q: And what was that output?

A. Cocaine hydrochloride.

Q: And on that specimen, was there also a weight measure?

A: Yes.

Q: What was it?

A: I believe it was 1.25 grams.

*Id.* at 120-21.

Appellant's sole basis for his claim of trial court error in the admission of Ms. Szpanka's testimony is Rule 702. His reliance on Rule 702 is unavailing. The rule provides:

> A witness **who is qualified as an expert** by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[18] C-7 was also a drug envelope containing little Ziploc bags that had a white substance in them *Id.* at 104, 111.

(a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.Evid. 702 (emphasis added). Rule 702 is not applicable because Ms. Szpanka did not render an opinion within the purview of the rule.

We discern no abuse of discretion by the trial court. ***See Antidormi***, 84 A.3d at 749.

For all of the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/22/2015