J-S36043-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SHAWNTAY LEE HANDY, | |
| Appellant | No. 2030 MDA 2015 |

Appeal from the Judgment of Sentence October 29, 2015
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0004537--2014

BEFORE:  MUNDY, J., DUBOW, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:          **FILED APRIL 20, 2016**

Appellant Shawntay Lee Handy appeals the judgment of sentence entered in the Court of Common Pleas of York County on October 29, 2015, following his conviction of Manufacture, Deliver or Possession with Intent to Manufacture of Deliver a Controlled Substance (cocaine).[1]  After our review, we affirm on the basis of the Opinion authored by the Honorable Richard K. Renn.

The trial court briefly set forth the relevant facts and procedural history herein as follows:

> On December 19, 2013, undercover officers observed a large, black male meet with a confidential informant (CI) in the area of 955 East Princess Street in the City of York.  After the

---

[1] 35 Pa.C.S.A. § 780-113(a)(30).

---

*Former Justice specially assigned to the Superior Court.

meeting, the CI turned over a bag of cocaine. On May 7, 2014, undercover officers again observed a large, black male, who was now known to them as the Appellant, meet with the same CI in the same area. Again, after the meeting, the CI turned over a bag of cocaine.

The Appellant was arrested on May 7, 2014, and released on bail on May 14, 2014. After seeking an extension of time to file Omnibus Pre-Trial Motions, the Appellant did file a Motion to Compel Disclosure of the Identity of the CI on February 23, 2015. On April 15, 2015, we granted the Appellant's motion with respect to the December 19, 2013, transaction, but denied it with respect to the May 7, 2014[,] transaction. Thus, the Commonwealth was only required to disclose the identity of the CI if it chose to proceed on both counts.

The Appellant's case was listed for trial during the May term of trials, but we were unable to try the case until September 14, 2015. Based on our ruling at the April 15th hearing, the Commonwealth withdrew Count 1, which was based on the December 19, 2013, transaction. A jury found the Appellant guilty of Count 2 on September 15, 2015. On October 29, 2015, we sentenced the Appellant to a term of 30 months to 60 months[,] imprisonment.[2]

Trial Court Opinion, filed 1/4/16, at 1-2.

Appellant filed a timely notice of appeal on November 16, 2015, and the requirements of Pa.R.A.P. 1925 have been satisfied. In his brief, Appellant presents the following statement of the questions involved:

1)
a) Did the lower court err in denying a motion to reveal the identity of a confidential informant who played a critical role in the alleged crime charged and was the only eye witness other than police, where the Commonwealth failed to demonstrate any reason for nondisclosure that outweighed Appellant's right to prepare a defense?

_____

[2] In light of the PSI, the trial court explained on the record it felt a sentence in the aggravated range was proper.

b) Did the lower court err in failing to order disclosure of the identity of the confidential informant as to a second count, where the court had already ordered the disclosure of the informant for an initial transaction, related to count one, where both counts stem from the same ongoing investigation?

2) Did the lower court err when it found that the evidence was sufficient to support the conviction for Possession with intent to deliver where no government witness actually observed an exchange of drugs for money?

Brief for Appellant at 3.

We review a claim that a trial court erred ruling upon a request for the disclosure of an informant's identity under an abuse of discretion standard as follows:

Under Pennsylvania Rule of Criminal Procedure 573, a trial court has the discretion to require the Commonwealth to reveal the names and addresses of all eyewitnesses, including confidential informants, where a defendant makes a showing of material need and reasonableness:

(a)    In all court cases, except as otherwise provided in Rule 230 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

(i)     the names and addresses of eyewitnesses....

Pa.R.Crim.P. 573(B)(2)(a)(i).

The Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source. In order to overcome this qualified privilege and obtain disclosure of a confidential informant's identity, a defendant must first establish, pursuant

- 3 -

to Rule 573(B)(2)(a)(i), that the information sought is material to the preparation of the defense and that the request is reasonable. Only after the defendant shows that the identity of the confidential informant is material to the defense is the trial court required to exercise its discretion to determine whether the information should be revealed by balancing relevant factors, which are initially weighted toward the Commonwealth.

In striking the proper balance, the court must consider the following principles:

> A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations[,] the trial court may require disclosure and, if the Government withholds the information, dismiss the action.

> [N]o fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Commonwealth v. Marsh*, 606 Pa. 254, 260–261, 997 A.2d 318, 321–322 (2010).

*Commonwealth v. Watson*, 69 A.3d 605, 607-08 (2013) (internal quotation marks and some citations omitted).

Herein, Appellant contends the disclosure of the C.I.'s identity was required because he or she was the sole witness to the drug transaction on May 7, 2014, and, therefore, his or her identity is both material to

Appellant's defense of fabrication and a reasonable discovery request. Brief for Appellant at 12, 15-18. Appellant further asserts the trial court essentially has allowed the Commonwealth to hamper his right to prepare and present a defense by making the strategic decision to dismiss count one to avoid the disclosure to the C.I.'s identity. *Id*. Finally, Appellant posits the Commonwealth failed to show a specific harm would likely befall the C.I. were his or her identify revealed; therefore, the trial court had no reason to protect the C.I.'s identity. *Id*. at 20-21.

Appellant also maintains the evidence was insufficient to support his conviction under 35 P.S. § 780-113, as it failed to establish he possessed narcotics with the intent to deliver them.

Our standard and scope of review of challenges to the sufficiency of evidence are well-settled:

> In challenges to the sufficiency of the evidence, our standard of review is *de novo,* however, our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner. Evidence is sufficient if it can support every element of the crime charged beyond a reasonable doubt. The evidence does not need to disprove every possibility of innocence, and doubts as to guilt, the credibility of witnesses, and the weight of the evidence are for the fact-finder to decide. We will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Forrey*, 108 A.3d 895, 897 (Pa.Super. 2015) (internal citations and quotations omitted).

In the two paragraphs he devotes to developing this claim in his appellate brief, Appellant argues none of the police officers were able to testify as to observing any actual exchange between the C.I. and him and reiterates that the C.I. was not identified or called as a witness at trial. Brief for Appellant at 20-21. However, as the trial court explains, a review of the record reveals the totality of the officers' testimony amply supports a conclusion Appellant possessed cocaine and intended to deliver the same to the C.I. on May 7, 2014. Trial Court Opinion, filed 1/4/16, at 9-16.

Having determined, after careful review, that the Honorable Richard K. Renn, in his Rule 1925(a) Opinion filed on January 4, 2016, ably and comprehensively disposes of the Appellant's issues on appeal, with appropriate references to the record and relevant caselaw and without legal error, we affirm on the basis of that Opinion. Most importantly, the trial court carefully details its reasons for its pretrial ruling on Appellant's Motion to Compel Identity of Confidential Informant. *Id*. at 3-8. We direct the parties to attach a copy of this Opinion in the event of further proceedings.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/20/2016

- 6 -

IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | CP-67-CR-0004537-2014 |
| | : | |
| vs. | : | 2030 MDA 2015 |
| | : | |
| Shawntay Lee Handy | : | |

## OPINION PURSUANT TO RULE 1925(a) OF THE PENNSYLVANIA RULES OF APPELLATE PROCEDURE

On September 15, 2015, the Appellant, Shawntay Lee Handy, was convicted of Count 2, Manufacture, Deliver or Possession with Intent to Manufacture or Deliver.[1] The Appellant was sentenced to 30 months to 60 months imprisonment on October 29, 2015. The Appellant filed timely Notice of Appeal to the Superior Court on November 16, 2015. We directed him to file a 1925(b) Statement, which he did on December 11, 2015. Pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, the following is our opinion regarding the merits of the Appellant's arguments on appeal.

Factual and Procedural History:

On December 19, 2013, undercover officers observed a large, black male meet with a confidential informant (CI) in the area of 955 East Princess Street in the City

---

[1] 35 Pa. C.S.A. § 780-113(a)(30).

1

of York. After the meeting, the CI turned over a bag of cocaine. On May 7, 2014, undercover officers again observed a large, black male, who was now known to them as the Appellant, meet with the same CI in the same area. Again, after the meeting, the CI turned over a bag of cocaine.

The Appellant was arrested on May 7, 2014, and released on bail on May 14, 2014. After seeking an extension of time to file Omnibus Pre-Trial Motions, the Appellant did file a Motion to Compel Disclosure of the Identity of the CI on February 23, 2015. On April 15, 2015, we granted the Appellant's motion with respect to the December 19, 2013, transaction, but denied it with respect to the May 7, 2014 transaction. Thus, the Commonwealth was only required to disclose the identity of the CI if it chose to proceed on both counts.

The Appellant's case was listed for trial during the May term of trials, but we were unable to try the case until September 14, 2015. Based on our ruling at the April 15th hearing, the Commonwealth withdrew Count 1, which was based on the December 19, 2013, transaction. A jury found the Appellant guilty of Count 2 on September 15, 2015. On October 29, 2015, we sentenced the Appellant to a term of 30 months to 60 months imprisonment. The Appellant filed a timely Notice of Appeal to the Superior Court on November 16, 2015. We directed the Appellant to file his 1925(b) Statement on November 18, 2015. On December 4, 2015, the undersigned Judge received the Appellant's 1925(b) Statement. However, in writing this opinion we determined that this document had not been filed with the Clerk of Court's Office. The Appellant corrected the oversight and filed his 1925(b) Statement on December 11, 2015.

2

Issues:

I.      Did this Court err in denying the Appellant's motion to reveal the identity of the confidential informant?

   a.   The Appellant alleges it was error for this Court to grant the Appellant's motion with respect to the first investigation, but deny the motion with respect to the second investigation because "the investigation as a whole cannot be separated in terms of what is material to mounting a defense."

   b.   The Appellant alleges it was error for this Court to deny the motion with respect to the second investigation because the confidential informant played a "critical role in the crime charged and was the only witness in a position to amplify or contradict the testimony of the government's witness(es); and where the Commonwealth failed to introduce any evidence to support the position that disclosure would have put the CI in any particular danger."

II.     Did the Commonwealth present sufficient evidence to prove beyond a reasonable doubt that the Appellant had possession of narcotics with the intent to deliver them?

Discussion:

   *Motion to Compel Identity of Confidential Informant:*

   The Appellant argues that this Court erred in denying his motion to compel the identity of the CI. For the following reasons, we disagree.

   At the time of the pre-trial hearing, which was held on April 15, 2015, the Commonwealth had charged the Appellant with two counts of Manufacture, Deliver or Possession with Intent to Manufacture or Deliver Cocaine. The two charges

3

stemmed from two different controlled buy scenarios. Count 1 was based on allegations that the Appellant delivered a sum of cocaine to a CI on December 19, 2013. Count 2 was based on allegations that the Appellant did the same thing on May 7, 2014.

Officer Michelle Hoover testified that on December 19, 2013, she was conducting surveillance as part of a controlled buy with the York County Drug Task Force. N.T. 4/15/2015 at 6. She was in an unmarked police SUV with Detective Russell Schauer, who was the driver. Id. at 6-7. The target location was 955 East Princess Street, and Officer Hoover and Detective Schauer were parked just down the street at the intersection of Warren and East Princess Streets. Id. at 7. From her vantage point, Officer Hoover indicated that she observed a black male exit the target house, do "something" in a van parked outside the house, and then walk up and down the street while talking on his cell phone. Id. at 10-11. The CI arrived in the area, and the two met briefly. Id. at 11. After the meeting, the black male walked back to the van, did "something" in the van, and then walked back into the target house. Id. at 11-12.

On cross-examination by the Commonwealth, Officer Hoover explained that she was part of the arrest team for the May 7, 2014 incident. N.T. 4/15/2015 at 12. Similar to the December 19, 2013 incident, Officer Hoover testified that on May 7, 2014, she observed a black male exit 955 East Princess Street, meet with a CI, and then return to the target house. Id. at 12-13. After the meeting, she and Detective Schauer moved in to arrest the black male, who was identified as the Appellant. Id. at 12-13.

Next, the defense called Detective Craig Fenstermacher. Along with Officer Hoover and some other members of the Drug Task Force, Detective Fenstermacher was conducting surveillance in the area of 955 East Princess Street on December 19,

4

2013. N.T. 4/15/2015 at 15. Detective Fenstermacher was parked above the location where Officer Hoover and Detective Schauer were conducting surveillance, so 955 East Princess Street would have been behind him. Id. at 17. From his position, Detective Fenstermacher observed an individual on a cell phone meet with a CI approximately 100 yards west of 955 East Princess Street. Id. at 17-18.

On cross-examination, Detective Fenstermacher testified that he was also involved in the controlled buy that took place on May 7, 2014. N.T. 4/15/2015 at 20. For that buy, Detective Fenstermacher was parked on a cross street with the entryway to 955 East Princess Street in his line of sight. Id. at 21. That day, the only observation he made was the Appellant leaving the target house and beginning to walk west, towards where the CI was located. Id. He did not actually see the meeting between the CI and the Appellant. Id.

On re-direct, defense counsel asked Detective Fenstermacher how he knew it was the same individual who met with the CI on both December 19, 2013 and May 7, 2014. N.T. 4/15/2015 at 22. The detective indicated that he identified the Appellant based on photographs that were shown to him prior to going out to the buy on May 7, 2014. Id.

No further testimony was taken at the suppression hearing. However, during argument, the Commonwealth informed the Court that the task force did not know the identity of the Appellant at the first buy, which was conducted on December 19, 2013. N.T. 4/15/2015 at 27. After that transaction, the CI identified the Appellant as the individual he met with and purchased cocaine from. Id. According to defense counsel, the CI provided the task force with information about a large, black male who goes by the name Blue, and indicated he could purchase cocaine from that individual. Id. at 30. At the time of the December 19, 2013 buy the officers did not know the true identity of Blue. Id. Finally, there was no dispute that in the first

5

controlled buy none of the officers in the area witnessed a hand-to-hand drug transaction. Id. The Commonwealth argued that although officers did not know the Appellant's identity at the time of the buy, the Appellant's physical description matched the individual that officer's saw meet with the CI on December 19, 2013. Id. at 31.

Based on the fact that the only person who could identify the Appellant as the man who met with the CI on the night of December 19, 2013, and who actually witnessed the transaction, was the CI, we granted the defense motion to compel disclosure of the CI's identity with respect to Count 1. N.T. 4/15/2015 at 37. However, we denied the motion with respect to Count 2.

The Appellant's first issue on appeal deals with our denial of his motion to compel the identity of the CI with respect to the second buy on May 7, 2014. The Commonwealth argued that factually the scenario is distinguishable from the issue in the first buy. N.T. 4/15/2015 at 32. Specifically, because the Appellant was taken into custody immediately after the second controlled buy was completed. Id. The Commonwealth stated that its argument at trial would be "this was the person who was there at the first buy because it is in the same area, same type of transaction, and same description as the person they observed the first time." Id.

We denied the Appellant's motion with respect to the second transaction and cited the following as our reasons: "The second transaction, however, is a much different situation. At the second transaction, the Defendant was arrested in the area of the transaction with the buy money laying about his feet. And all of that information can be testified to by the police officers." N.T. 4/15/2015 at 37.

On appeal, the Appellant argues that our decision to deny his motion as far as the second transaction is error because the CI was a material witness and because the Commonwealth failed to show there was any threat or danger to the CI if his/her

6

identity would be revealed. The Appellant separates these into two issues, but for the sake of clarity we will discuss them together.

The Commonwealth's privilege to keep confidential informants confidential is not absolute. *See Commonwealth v. Roebuck*, 681 A.2d 1279, 1283 n. 6 (Pa. 1996). Our Supreme Court held "if a defendant shows that disclosure of an informant's identity would yield information material to his or her defense, and that the request for disclosure is reasonable, the trial court must then balance relevant factors to determine, in its discretion, whether the informant's identity should be revealed." *Commonwealth v. Marsh*, 997 A.2d 318, 321 (Pa. 2010). The Court is to consider the following factors: "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors essential to a fair balancing of the competing interests involved." Id.

With respect to the Appellant's first argument that we cannot view the two transactions separately when determining whether the CI's identity should be revealed, we disagree. As we stated at the Appellant's April 15th hearing, the December 19th transaction was very different from the May 7th transaction. In the first transaction, officers did not even know the identity of the dealer; all they had was a street name. It was only after the transaction took place that the CI picked the Appellant out of a photo lineup. Thus, the CI was the only witness who could identify the Appellant as the person who sold him/her drugs. Conversely, in the second transaction several officers saw the Appellant meet with the CI. Then, immediately after this meeting, the arrest team moved in, the Appellant ran, and he was arrested shortly thereafter. In the area next to where the Appellant was arrested the official funds were recovered. Furthermore, the CI was thoroughly searched before the buy, and after the buy he/she turned over a bag of cocaine. We have found

7

no law prohibiting us from viewing the two transactions separately for purposes of deciding the defense motion to compel the CI's identity.

With respect to the Appellant's second argument that the CI was a critical witness in that he/she was the only one who could have bolstered or contradicted the police officer's testimony, we agree with that statement, but disagree with how it factors into our analysis. Conceivably, the CI's testimony could have completely contradicted the Commonwealth's entire version of events. However, that is not the standard the Appellant must meet. *See Commonwealth v. Delligatti*, 538 A.2d 34 (Pa. Super Ct. 1988). The law is clear in that "[b]efore disclosure of an informant's identity is required, the proponent for disclosure must make more than a mere assertion that the identity of an informant might be helpful to the defense." Id. at 39. Here, there was no evidence presented to suggest that the officers or the CI were conspiring to set the Appellant up. Furthermore, aside from the Appellant's bald assertion, there was no evidence to suggest that the CI would testify in favor of the Appellant. Frankly, the CI's testimony would have been superfluous.

Wrapped up in the Appellant's second argument is that the Commonwealth failed to produce evidence that revealing the CI's identity would place the CI in danger. We agree that the Commonwealth did not present any evidence suggesting that the CI would be in danger or threatened in any way. However, this is only one factor to consider. It is our opinion, based on common sense, that there is an inherent danger in being a CI. With that being said, this did not factor into our decision to deny the Appellant's motion with respect to the second transaction. The circumstances of the second transaction guided our decision. Had the Appellant not been immediately arrested after the buy our decision may have been more difficult.

In conclusion, we think that we were not in error in making separate determinations based on the differing facts of the two transactions. Furthermore,

8

with respect to the May 7, 2014 transaction, we think the factors stated in *Rovario v. United States* weigh in favor of denying the Appellant's motion to compel the identity of the CI.

*Sufficiency of the Evidence:*

As a preliminary matter, it should be noted that "when challenging the sufficiency of the evidence on appeal, the "[a]ppellant's [court ordered Pa. R.A.P. 1925(b) concise] statement must specify the element or elements upon which the evidence was insufficient in order to preserve the issue for appeal." *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. Ct. 2009). If the appellant fails to conform to the specificity requirement, the claim is waived. Id. In the present case, the Appellant's 1925(b) Statement does state with sufficient specificity the issues he intends to raise on appeal.

The standard of review for an appellate court reviewing a sufficiency of the evidence claim is well settled:

> 'The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses

9

and the weight of the evidence produced, is free to believe all, part or none of the evidence.'

*Commonwealth v. Charlton*, 902 A.2d 554, 563 (Pa. Super. Ct. 2006) (quoting

*Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. Ct. 2001).

The Appellant was found guilty of Manufacture, Deliver or Possession with Intent to Manufacture or Deliver Cocaine, which is defined as:

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited: ...
> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 Pa. C.S.A. § 780-113(a)(30). The Appellant argues that the Commonwealth failed to show he possessed cocaine with the intent to deliver it. We disagree.

Detective Craig Fenstermacher, a member of the York County Drug Task Force, testified that on May 7, 2014, he and other members of the Drug Task Force were conducting a controlled buy in the 900 block of East Princess Street in the City of York. N.T. 9/14-9/15/2015 at 111. Prior to observing the buy, Detective Fenstermacher explained that through his briefing with Detective Bruckhart he learned that the target of the investigation was the Appellant. Id. Detective Fenstermacher's role in the investigation was to observe the front door area of 955 East Princess Street where officers believed the Appellant would be making the buy. Id. at 112. After the buy was complete, Detective Fenstermacher was then to pick up the confidential informant and bring him/her to a secure location. Id.

10

Detective Fenstermacher explained that he parked his vehicle on Simpson Street, a small side street that runs perpendicular to East Princess Street. N.T. 9/14-9/15/2015 at 112-13. From that position, which was about 30 to 35 yards away, he observed a black male matching the Appellant's description walk out of 955 East Princess Street and walk west. Id. at 113. Detective Fenstermacher heard the communication between Detective Schauer and Officer Hoover relaying what they had observed, and that they were moving in to arrest the Appellant. Id. at 114. At that point, Detective Fenstermacher's job was to follow the CI west, pick him/her up, and recover the cocaine. Id. The CI was taken back to Detective Fenstermacher's office where he was searched and released. Id. at 116. Finally, Detective Fenstermacher identified the Appellant as the individual who was arrested the night of the controlled buy. Id. at 118.

On cross-examination, Detective Fenstermacher clarified that on this specific case he was not the lead investigator; he was only acting in a supporting role. N.T. 9/14-9/15/2015 at 120-21. He further testified that officers did not know exactly where the buy was to take place, but they knew it was going to be somewhere west of 955 East Princess Street, which is why all of the officers were stationed to the west. Id. at 123. Detective Fenstermacher was certain that the moment he lost sight of the Appellant Detective Schauer was able to see him. Id. at 124. With respect to the CI, Detective Fenstermacher believed that at least one member of the team had "eyes" on him at all times. Id. at 127. Lastly, Detective Fenstermacher testified that he did not create a report of what he observed on May 7, 2014, but that he did review Detective Bruckhart's report before testifying. Id. at 128.

On re-direct examination, Detective Fenstermacher indicated that the reason he did not create a supplemental police report was because his role and observations were very limited. N.T. 9/14-9/15/2015 at 136. Per Drug Task Force procedures, the

11

lead officer is usually the one who writes the police report; in this case, that would have been Detective Adam Bruckhart. Id. Detective Bruckhart then makes the decision as to what information he will include in that report with respect to other officers' observations. Id. at 136-37.

Detective Russell Schauer, also of the York County Drug Task Force, testified his role on the night of May 7, 2014, was to conduct surveillance just west of the entrance to 955 East Market Street. N.T. 9/14-9/15/2015 at 139. Part of his job was also to keep "eyes" on the transaction and CI. Id. at 140. Detective Schauer was positioned on Warren Street, which intersects with East Princess Street and is to the west of the target house. Id. at 141. While waiting for the transaction to occur, Detective Schauer received radio communication from Detective Fenstermacher indicating that the target, the Appellant, had emerged from 955 East Princess Street. Id. at 142. Detective Schauer was able to see the Appellant and the CI walk towards each other, meet briefly, and separate. Id. He was simultaneously relaying this information to the other officers. Id. During the time Detective Schauer had the CI in his sight he did not see him meet with any other individuals except the Appellant. Id. at 144.

On cross-examination, Detective Schauer testified that he was in a vehicle with Officer Michelle Hoover at the time he observed the controlled buy. N.T. 9/14-9/15/2015 at 147. Although Detective Schauer was certain the man who exited 955 East Princess Street was the Appellant, he admitted that he could not make out facial features, just that it was a tall, black male with a muscular build. Id. at 145, 148. Detective Schauer said that the actual transaction took place right in front of the vehicle he and Officer Hoover were sitting in. Id. at 149. When the Appellant began walking away, Detective Schauer and Officer Hoover pulled out in front of him and attempted to arrest him. Id. at 151. The Appellant began to run, and Officer Hoover

12

gave chase, apprehending him shortly thereafter. Id. at 151-52. Lastly, Detective Schauer admitted that this area of the city is not the safest, and that he and Officer Hoover were in plainclothes riding in an unmarked police car at night. Id. at 153-54. However, they did have raid vests on that said "police" on the front and back. Id. at 153.

On re-direct, Detective Schauer stated he did not create a supplemental police report because he relays his observations to Detective Bruckhart who adds them to his police report. N.T. 9/14-9/15/2015 at 156. He stated it would be unusual for him to create a report in this kind of case. Id. He also said that the reason he did not take any pictures that night was because they knew they were going to arrest the target immediately after the buy, so photographs would not have been needed. Id. at 158. On re-cross examination, like Detective Fenstermacher, Detective Schauer reviewed Officer Bruckhart's report before coming to testify at the Appellant's trial. Id. at 59-60.

The next witness for the Commonwealth was Officer Michelle Hoover. Her testimony was similar to Detective Schauer's. N.T. 9/14-9/15/2015 at 162-66. Officer Hoover stated that when the Appellant began to run, she jumped out of the vehicle and gave chase. Id. at 166. As the Appellant attempted to jump a fence, he fell and Officer Hoover was able to apprehend him. Id. at 166-67. In the area on the ground near the Appellant, Officer Hoover observed some money, and Detective Bruckhart collected it as evidence. Id. at 168. Officer Hoover identified the Appellant as the man she arrested on the night of May 7, 2014. Id. Like the other witnesses, Officer Hoover did not create a supplemental report conveying what she observed the night the Appellant was arrested. Id. at 170.

On cross-examination, Officer Hoover explained that it was her job to watch the CI and it was Detective Schauer's job to watch the Appellant. N.T. 9/14-9/15/2015

13

at 175-76. Although Officer Hoover was able to clearly observe the interaction between the CI and the Appellant, she did not actually see a hand-to-hand drug transaction occur. Id. at 176.

The last witness for the Commonwealth was Detective Adam Bruckhart, who was the lead investigator for the controlled buy targeting the Appellant. N.T. 9/14-9/15/2015 at 183. As part of being lead investigator, Detective Bruckhart was tasked with gathering background information on the Appellant and his suspected drug dealing activities. Id. at 183-84. According to Detective Bruckhart, the investigation into the Appellant began sometime before the night of May 7, 2014. Id. at 183. In total, about 11 officers participated in the controlled buy that night. Id. at 184.

Because Detective Bruckhart was the lead investigator in this case he conducted the initial briefing before the buy actually took place. N.T. 9/14-9/15/2015 at 188. He explained that he draws a map on a white board and assigns officers to various locations around the area where the buy is expected to take place. Id. Detective Bruckhart explained that he instructed the CI to call the target, in this case the Appellant, and order a quarter-ounce of cocaine. Id. The officers were all shown a picture of the Appellant and given some background information about him. Id. Detective Bruckhart then explained how he expected the buy to take place. Id. at 188-89.

With respect to the CI used in the present case, Detective Bruckhart explained that this CI was arrested by members of the Drug Task Force approximately a month before this controlled buy. N.T. 9/14-9/15/2015 at 189. In exchange for doing some work for the task force, the CI was hoping to get a reduction in his/her sentence. Id. On the night of the buy, Detective Bruckhart asked the CI to meet him at his office around 8:30PM. Id. at 191. Detective Bruckhart asked the CI if he had had any recent contact with the Appellant, and directed the CI to call and make arrangements to

14

purchase a quarter-ounce of cocaine from the Appellant. Id. Detective Bruckhart was sitting next to the CI while the call was placed, which allowed him to hear what was being said. Id. The agreed upon price was $360, and the CI and the Appellant were to meet in a half an hour. Id. at 192-93.

Before taking the CI to the buy location, Detective Bruckhart searched the CI's person. N.T. 9/14-9/15/2015 at 193. Detective Bruckhart explained that he first looks for any weapons the CI may have on him/her, and then looks for drugs and money. Id. After the search, Detective Bruckhart gave the CI $360 in official funds[2] and drove him to the location. Id. at 194. From the time the CI was searched to the time he/she was dropped off at the buy location Detective Bruckhart had him in his sight at all times. Id. at 195. Through radio communication, Detective Bruckhart testified that the CI was in the sight of at least one member of the task force from the time he/she was dropped off to the time Detective Fenstermacher picked him/her up after the buy. Id. at 195-96.

After the Appellant was arrested, Detective Bruckhart collected the money that was found on the ground near the Appellant. N.T. 9/14-9/15/2015 at 199. Detective Bruckhart conducted a search incident to arrest of the Appellant's person and found $430 in cash, a cell phone, and a bag of packaging material that was consistent with drug paraphernalia. Id. at 200. The $430 was not the same money as the official funds given to the CI. Id. However, the money found on the ground near the Appellant did match the official funds. Id.

When everyone got back to the task force office, Detective Fenstermacher gave Detective Bruckhart a bag of cocaine that the CI had given to him. N.T. 9/14-9/15/2015 at 201. Detective Bruckhart called the phone number that the CI had called, and the cell phone found on the Appellant began to ring. Id. at 202. Finally,

---

[2] This money is photocopied so the serial numbers can be compared to any money found on the target when he or she is arrested. N.T. 9/14-9/15/2015 at 194.

15

Detective Bruckhart sent the suspected bag of cocaine to the Pennsylvania State Crime Laboratory to be tested; it came back positive for cocaine.[3] Id. at 203-04.

On cross-examination, Detective Bruckhart testified that the CI that was used on the night of May 7, 2014, is no longer working for the task force. N.T. 9/14-9/15/2015 at 211. Detective Bruckhart admitted that out of the 11 officers present at the buy not one of them could say they saw a hand-to-hand drug transaction, but he added that he was confident that he observed a drug deal. Id. at 214. Detective Bruckhart also admitted that his view of the CI may not have been "completely free of obstruction," but that did not mean he was unable to see the CI at all times. Id. at 215-16. When asked why the controlled buy was not set up to be conducted in the daytime, Detective Bruckhart stated that they had tried for months to do just that, but because of work schedules and the Appellant's availability it was not possible. Id. at 219.

Based on the above testimony and evidence, we think the Commonwealth presented sufficient evidence to show the Appellant delivered cocaine to the CI. There was no evidence to suggest that Detective Bruckhart's search of the CI's person was faulty, or that the CI somehow concealed cocaine on his person before the controlled buy was to take place. Likewise, there was no evidence to suggest that the CI was out of the task force's sight for a long enough period to get cocaine from another source. Finally, the evidence showed that after the CI briefly meets with the Appellant, the CI turns over a bag of cocaine. The Appellant is arrested shortly after this brief encounter and is found with official funds near his person. Despite the task force not being able to witness a hand-to-hand drug transaction, a reasonable jury could have inferred that there was no other way for the CI to obtain the cocaine except from the Appellant.

---

[3] The parties entered into a stipulation that if called to testify Kathy M. Martin, a forensic scientist, would state that the substance in the bag was cocaine weighing 6.89 grams. N.T. 9/14-9/15/2015 at 204.

16

Conclusion:

For the abovementioned reasons, we respectfully submit that the Appellant's arguments on appeal are without merit.

By the Court:

Date:   December 31, 2015

Richard K. Renn, Judge